UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ADDISON IRWIN and GEORGE IRWIN,

        Plaintiffs,

v.

WEST IRONDEQUOIT CENTRAL SCHOOL DISTRICT, FERNANDA BONAVILLA, individually and in her official capacity as an employee of the West Irondequoit Central School District, JEFFREY CRANE, individually and in his capacity as the Superintendent of the West Irondequoit Central School District, and other known and unknown employees of the WEST IRONDEQUOIT CENTRAL SCHOOL DISTRICT,

        Defendants.

**DECISION AND ORDER**

6:16-CV-06028 EAW

---

## INTRODUCTION

Plaintiffs Addison Irwin ("Addison") and George Irwin ("George") (collectively, "Plaintiffs") commenced this action by filing a complaint on January 19, 2016. (Dkt. 1). They then filed an Amended Complaint on January 25, 2016. (Dkt. 2). Plaintiffs' Amended Complaint, filed under 42 U.S.C. § 1983, asserts constitutional claims arising out of Addison being denied permission to participate in a high school class trip to Italy. (*See generally id.*). The Amended Complaint names as defendants: (1) the West Irondequoit Central School District ("WICSD"); (2) WICSD teacher Fernanda Bonavilla ("Bonavilla"), individually and in her official capacity; (3) WICSD Superintendent

Jeffrey Crane ("Crane"), individually and in his official capacity; and (4) other known and unknown employees of WICSD (collectively, "Defendants"). (*Id.* at ¶¶ 2-4).

Pending before the Court are Defendants' motion to dismiss the Amended Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 3), and Plaintiffs' cross-motion for leave to file a Second Amended Complaint (Dkt. 12). For the reasons set forth below, Defendants' motion to dismiss is granted, and Plaintiff's cross-motion for leave to file a Second Amended Complaint is denied as futile.

## BACKGROUND

### I. Amended Complaint

The following facts are drawn from the Amended Complaint. Addison, a student in the WICSD, took Italian language classes from the seventh through the eleventh grade. (*Id.* at ¶¶ 7-9). One reason that he continuously enrolled in those classes "was so that he could go on a class trip to Italy customarily offered by defendants to junior year students at the Irondequoit High School" (*id.* at ¶ 8), and he expected that he would be permitted to go on that trip (*id.* at ¶ 9). In July 2014, Addison's parents made a deposit toward the trip. (*Id.* at ¶ 10).

In November 2014, Addison's parents received a phone call from the Italian language teacher, Bonavilla, who told them that Addison would not be permitted to go on the trip because he was "not doing well in class," his "attendance was poor," and he "would be a 'liability'"; however, Bonavilla "would not identify the nature of the alleged liability." (*Id.* at ¶¶ 11-13). Before receiving Bonavilla's phone call, neither Addison nor

his parents were advised that he would be ineligible to participate in the trip for poor performance or attendance or that there were any eligibility requirements at all. (*Id.* at ¶¶ 14-15). Shortly after Bonavilla's phone call to Addison's parents, she told all students participating in the trip that they could do so only if they had adequate grades and attendance. (*Id.* at ¶ 16).

After Bonavilla's phone call, George and Superintendent Crane set up a meeting regarding Bonavilla's decision. (*Id.* at ¶¶ 17-18). During the meeting, Crane "declined to identify the nature of the 'liability' posed by Addison" and stated that it was a "grey area" as to whether the trip was a private or school function. (*Id.* at ¶ 19). Crane "refused to consider any of the arguments advanced by [George] Irwin and declined to reverse the decision made by . . . Bonavilla." (*Id.* at ¶ 20). Bonavilla promoted the trip during Addison's Italian classes. (*Id.* at ¶ 21).

As a result of not being permitted to go on the trip and being humiliated in front of his classmates, Addison dropped his Italian classes. (*Id.* at ¶ 22). Addison transferred out of WICSD and enrolled at a different school, where George must pay tuition and where Addison—an award-winning lacrosse player—can no longer play lacrosse, "which has necessitated him participating in a club team from Massachusetts in an effort to maintain his visibility to college scouts." (*Id.* at ¶¶ 23-26). Addison also suffered emotional trauma, requiring professional treatment. (*Id.* at ¶ 27).

Plaintiffs claim that Defendants acted under the color of state law to deprive them of their right to equal protection under the Fourteenth Amendment. (*Id.* at ¶¶ 28-32). Plaintiffs also claim that "Plaintiffs' civil rights, as guaranteed by the Constitution,

statutes, common law and case law of the United States and of New York state were willfully violated by the Defendants." (*Id.* at ¶ 30). They seek punitive damages, attorney's fees, and costs. (*Id.* at 5-6).

## II. Pending Motions

On February 11, 2016, Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, that Plaintiffs have failed to plead any constitutional violation because Addison had no constitutional right to attend the Italy trip, and Plaintiffs failed to sufficiently allege the necessary elements of an Equal Protection claim. (Dkt. 3; Dkt. 3-1 at 12-18).

Plaintiffs' response to Defendants' motion to dismiss was due on May 9, 2016 (Dkt. 7). That day, Plaintiffs filed a Second Amended Complaint (Dkt. 9), without first obtaining consent of either Defendants or the Court (Dkt. 12-1 at ¶ 13). The parties then stipulated to an extension of time for Plaintiffs to respond to Defendants' motion to dismiss and for Plaintiffs to file a cross-motion to amend. (Dkt. 10). On May 18, 2016, Plaintiffs filed a cross-motion seeking leave to file the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and a response in partial opposition to Defendants' motion to dismiss. (Dkt. 12; Dkt. 12-3 at 2-5).

The Second Amended Complaint differs from the Amended Complaint with respect to the parties involved, the facts alleged, and the claims asserted. The Second Amended Complaint does not name George as a plaintiff, leaving Addison as the sole plaintiff; moreover, Bonavilla and Crane are sued only individually and not in their official capacities. (Dkt. 12-2 at 2). The Second Amended Complaint adds the following

factual allegations: (1) Addison and his parents were not "advised of any 'liability' presented by his participation in the trip" before placing a deposit or receiving Bonavilla's phone call; (2) "Addison suffers from no physical or mental disability, which would make him a 'liability'"; and (3) no members of his class were advised of eligibility requirements for the trip. (*Id.* at 4). The Second Amended Complaint also adds a claim that Defendants retaliated against Addison for exercising his First Amendment rights, based on the following assertions:

> Since Addison has no physical or mental impairments which would make him a "liability" on the class trip, upon information and belief, this reference must be to something Addison allegedly said or did. Addison has never said or done anything which would pose a threat to the safety, good order, or discipline of the school.

(*Id.* at 7).

On June 15, 2016, Defendants filed a response in opposition to Plaintiffs' cross-motion to amend and a reply in further support of the motion to dismiss. (Dkt. 13). Defendants argue, *inter alia*, that amendment would be futile (Dkt. 13-3 at 6-7), and that Plaintiffs' § 1983 claims are deficient because Defendants' alleged actions did not occur under the color of state law because the Italy "trip is not a sponsored activity of the [WICSD] or High School," and "Plaintiff has presented no reason that the alleged actions of Ms. Bonavilla are attributable to the school. . . . " (*id.* at 7-9). In support of the latter argument, Defendants rely on declarations by Bonavilla and Crane. (*Id.* at 8-9; *see also* Dkt. 13-1; Dkt. 13-2).

The parties appeared before the undersigned at a motion hearing regarding the motion to dismiss and cross-motion for leave to file the Second Amended Complaint on October 25, 2016, at which time the Court reserved decision. (Dkt. 16).

## DISCUSSION

### I. Motion to Dismiss

In considering a motion to dismiss, a court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("The plausibility standard is not akin to a probability requirement. A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." (citations and internal quotation marks omitted)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration and citations omitted). Thus, "at a bare minimum, the operative standard requires the 'plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration and citations omitted).

### A. Claims by George Irwin and Official Capacity Claims

Given that Plaintiffs' Second Amended Complaint eliminates the claims by George and against Bonavilla and Crane in their official capacities, Plaintiffs concede that George is not a proper party to this action and that the official capacity claims are meritless. (*See* Dkt. 12-3 at 2 n.1). Accordingly, the Court dismisses those claims and need not consider them on the merits.

Even if Plaintiffs had not conceded those points, Defendants rightly argue that those claims should be dismissed. (Dkt. 3-1 at 10-12). First, George lacks standing to bring the asserted § 1983 claims based solely on the deprivation of the constitutional rights of his son, Addison. *See, e.g., Kaminski v. Comm'r of Oneida Cty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104-05 (N.D.N.Y. 2011) ("[P]arents lack standing to bring claims individually pursuant to § 1983 based solely upon a deprivation of a child's constitutional rights."); *Rodenhouse v. Palmyra-Macedon Cent. Sch. Dist.*, No. 07-CV-6438 CJS, 2008 WL 2331314, at *3 (W.D.N.Y. June 3, 2008) (same); *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) (same).

Second, the official capacity claims against the individual defendants are duplicative of the same claims against the school district. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotation marks and citations omitted)); *see also Barmore v. Aidala*, 419 F. Supp. 2d 193, 202 (N.D.N.Y. 2005) (dismissing official capacity claim against Board of Education President as redundant where the Board of Education was also named as a defendant on the basis that "it is well settled that a claim against a defendant in his official capacity is one and the same as a claim against the entity that the individual represents").

## B. § 1983 Claim

"To state a § 1983 claim, a plaintiff must establish that the defendant deprived him of a federal or constitutional right while acting under the color of state law." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).[1]

### 1. Due Process

Plaintiffs' § 1983 claim is based on a purported violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, arising out of "[D]efendants' decision to disqualify Addison from the trip without the warnings which were subsequently given to other similarly situated students." (Dkt. 2 at ¶ 29). In the Court's view, this premise would more logically give rise to a due process claim. The

---

[1] For the first time in opposition to Plaintiffs' cross-motion to amend, Defendants raise the argument that there was no state action. (Dkt. 13-3 at 3-5). The Court need not address the state action requirement because, as discussed, Plaintiffs have failed to state an Equal Protection claim.

characterization of Plaintiffs' claim as an Equal Protection violation is somewhat strained, and indeed, appears to be an attempt to avoid the unfavorable conclusion that would result from raising a due process claim. As discussed below, had Plaintiffs asserted a due process claim arising out of Addison's disqualification from the Italy trip, it would be meritless.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and "those who seek to invoke its procedural protection must establish that one of these interests is at stake."" *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (citation omitted). The Second Circuit has held that, while there is no federal constitutional right to an education, New York State's education laws "create a property interest in education protected by the Fourteenth Amendment." *Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006). The Supreme Court has held that a state must "recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1974).

The Second Circuit, citing *Goss*, concluded in *Kajoshaj v. New York City Department of Education*, 543 F. App'x 11 (2d Cir. 2013), that a student could not establish a deprivation of due process arising out of the school's decision to hold the student back. *Id.* at 16. The Second Circuit reasoned that the student was not denied

access to the state's educational system as a result of not being promoted to the next grade. *Id.*

Also interpreting *Goss*, the court in *Mazevski v. Horseheads Central School District*, 950 F. Supp. 69 (W.D.N.Y. 1997), concluded that a public high school student did not have a constitutional right to participate in any specific curricular or extracurricular activity. *Id.* at 72. In that case, the student and his parents brought a § 1983 claim against the school district and school employees, asserting that those defendants violated the student's constitutional right to procedural due process when he was dismissed from the marching band for misconduct. *Id.* at 69-70. The issue, therefore, was whether the student had a protectible property interest in participating in the marching band, subject to constitutional protection. *See id.* at 71. The court held that the student did not, reasoning that the protected property interest contemplated by *Goss* was "the right to participate in the entire educational process," but "not the right to participate in each individual component of that process." *Id.* at 72 (citing *Goss*, 419 U.S. at 576, 579). As a result, the court held that a student's "exclusion from a particular course, event or activity is of no constitutional import." *Id.* The court reasoned that a contrary rule would be unwise:

> If the rule were otherwise, every disgruntled student (or, more likely, disgruntled parent) who believed she should not have been dropped from the pep squad, or who believed he should not have been benched for missing a team meeting, or who challenged his failure to be selected to take advance placement courses, could commence an action in federal court to challenge the decision of the school's administrators. This should not be.

*Id.* at 73.

Other district courts in this Circuit have interpreted *Goss* to conclude that students do not have a constitutional interest in certain school events or activities. In one case, the court held that a student did not have a protectible interest in participating in a school's foreign language program. *See Toth ex rel. Toth v. Bd. of Educ., Queens Dist. 25*, No. 07-CV-3239 (SLT)(JO), 2008 WL 4527833, at *5-6 (E.D.N.Y. Sept. 30, 2008). Other decisions in this Circuit have similarly concluded that no deprivation of a student's property interest results from not being allowed to participate in certain school activities. *See, e.g., Immaculate Heart Cent. Sch. v. N.Y. State Pub. High Sch. Athletic Assoc.*, 797 F. Supp. 2d 204, 216-17 (N.D.N.Y. 2011) (granting motion to dismiss because "participation in interscholastic athletics is not protected by due process"); *Hadley v. Rush Henrietta Cent. Sch. Dist.*, No. 05-CV-6331T, 2007 WL 1231753, at *3 (W.D.N.Y. Apr. 25, 2007) ("It is firmly established that there is no constitutional right to participate in extracurricular sporting activities."); *see also S.C. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-1672 (CS), 2012 WL 2940020, at *6 (S.D.N.Y. July 18, 2012) (finding no deprivation of student's property interest in public education where public school district purportedly failed to remedy bullying and harassment, causing student to enroll in private school, because school district did not suspend student or prevent him from enrolling in another school within the district).

Based on the foregoing case law, it is clear that Defendants' actions—failing to warn Addison about any eligibility requirements for the trip and disqualifying him from the trip—did not deprive him of his "right to participate in the entire educational process." *Mazevski*, 950 F. Supp. at 72. Accordingly, even if Plaintiffs had asserted a

due process claim, Addison had no protectible interest in participating in the Italy trip, and thus cannot establish a due process violation.

### 2. Equal Protection

The claim that Plaintiffs did assert—an Equal Protection violation—fares no better. In their opposition to Defendants' motion to dismiss, Plaintiffs clarify that they have asserted a "class of one" Equal Protection Claim. (Dkt. 12-3 at 3). A "class of one" claim is one in which "the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "[I]n order to succeed on a "class of one" claim, the similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *rev'd on other grounds, Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).

Here, while Plaintiffs' Amended Complaint references "other similarly situated students" (Dkt. 2 at ¶ 29), it fails to set forth any facts that identify those students and how their circumstances are similar to his. In opposition to Defendants' motion to dismiss, Plaintiffs elaborate that the comparators are "other students who were accepted for the trip to Italy." (Dkt. 12-3 at 3-4). Even with that minor elaboration, Plaintiffs fail to identify how those students' circumstances were similar to Addison's circumstances. Absent from Plaintiffs' Amended Complaint is any allegation that Defendants treated students with purported attendance and performance issues differently than they treated Addison or let such students participate in the trip. *See Neilson*, 409 F.3d at 104; *see also*

*Twombly*, 550 U.S. at 555 (explaining that plaintiff must provide "more than labels and conclusions" to survive a motion to dismiss). Also absent is any allegation that Defendants' differential treatment was intentional. *See Olech*, 528 U.S. at 564 (requiring allegation of intentional disparate treatment). Moreover, Plaintiffs' Amended Complaint fails to include any allegation that Defendants lacked a rational basis for treating Addison differently than the students similarly situated to him. *See id.* (requiring arbitrariness). Accordingly, Plaintiffs have failed to state an Equal Protection claim as to any of the Defendants, and the Court grants Defendants' motion to dismiss as to this claim.

### C. State Law Claims

Plaintiffs' Amended Complaint briefly asserts that their civil rights, as guaranteed by New York State law, were violated. (Dkt. 2 at ¶ 30). Plaintiffs failed to develop or identify the nature of the state law claims. However, to the extent that the fleeting reference to state law means that Plaintiffs have alleged state law claims, the Court declines to exercise jurisdiction over them, given that Plaintiffs' federal claims should be dismissed. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." (quotation omitted)). Accordingly, the Court dismisses the state law claims without prejudice.

## II. Motion to Amend Complaint

Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* Here, Defendants oppose amendment on the ground of futility. (Dkt. 13-3 at 11-12).

Plaintiffs' Second Amended Complaint fails to state a cause of action, and therefore, any amendment would be futile. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (holding that amendment is futile if the proposed amended complaint does not state a claim upon which relief can be granted). The Second Amended Complaint does not materially change or elaborate on the factual allegations in support of Plaintiffs' Equal Protection Claim. Thus, that claim is deficient for the same reasons set forth above.

Plaintiffs' proposed First Amendment retaliation claim is also deficient. "To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). Here, Plaintiffs' facts are too vague and speculative to support a First Amendment retaliation claim. Plaintiffs have not identified the protected speech or conduct by

Addison on which the retaliation claim is based, let alone any speech or conduct at all. Indeed, Plaintiffs only speculate that Defendants' proffered reason for disqualifying Addison—that he was a "liability"—"must be [a reference] to something Addison allegedly said or did." (Dkt. 12-2 at ¶ 39). Accordingly, amendment would be futile because Plaintiffs' Second Amended Complaint fails to state a cause of action. Therefore, the Court denies Plaintiffs' cross-motion to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 3) is granted, Plaintiffs' cross-motion for leave to file a Second Amended Complaint (Dkt. 12) is denied, and the Amended Complaint is dismissed.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 2, 2017
       Rochester, New York